UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:05CR38 HEA |
| | ) | |
| KENNY LYNN TOLLISON and | ) | |
| TERRY L. WILLIAMS, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on the Report and Recommendation of Magistrate Judge David D. Noce that Defendant Tollison's Motion to Suppress Tangible Evidence, [#19], be denied. An evidentiary hearing on the matter was held before Judge Noce on April 28, 2005. Defendant Tollison has filed a one-page written objection to the Report and Recommendation, referencing only the reasoning contained in his Motion to Suppress and Memorandum in Support thereof. The Government has not filed objections or other response. Pursuant to 28 U.S.C. § 636, the Court will therefore conduct a *de novo* review of those portions of the Report and Recommendation to which Defendant Tollison objects.

### Facts and Background

On May 1, 2004, Narcotics Detective, Chris Rataj, received a telephone call

while off-duty from an employee of a Family Dollar Store in Sikeston, Missouri, who described the suspicious activity of two store customers. The employee explained that the two customers arrived at the store in the same vehicle, a blue truck, but that upon entering the store, the two separated. One of the customers went to the cold medicine aisle and purchased cold medication which contained ephedrine, a known methamphetamine precursor. The other customer selected similar medication but replaced it on the shelf and left the store. The two rejoined at the blue truck and drove away. Det. Rataj thereafter observed the blue truck at the Super D retail store. Rataj testified at the evidentiary hearing that from his experience, he knew that methamphetamine traffickers often purchase precursor chemicals at different stores to accumulate a sufficient quantity for methamphetamine production. Rataj contacted the Super D pharmacy and was told that a customer was purchasing cold medication, so he radioed for a uniformed officer to stop the truck.

Sgt. Andrew Cooper and Officer Brian Dover, both in separate patrol cars, were dispatched to assist Det. Rataj and were advised of the nature of the situation. Sgt. Cooper stopped the truck, which contained two persons–Defendant Kenneth Lynn Tollison, the driver, and Co-Defendant Terry Williams, the passenger. Sgt. Cooper testified at the hearing that as the truck stopped, he saw the driver make a motion as though reaching under his seat. Cooper believed it was possible that the driver was

secreting a weapon and he was concerned for his safety. Cooper approached the vehicle and asked the driver for identification, and the driver identified himself as Kenneth Tollison. Cooper directed Defendant Tollison to get out of the truck, which he did, since Cooper intended to perform a protective sweep of the truck for his safety. Cooper testified that he Tollison appeared very nervous and agitated, which increased Cooper's concern for safety, since he knew from his training that people act erratically under the influence of drugs.

Officer Dover arrived behind Sgt. Cooper at the traffic stop, and Cooper directed Dover to perform a pat-down search of Tollison due to the furtive movements Cooper witnessed Tollison make earlier. Cooper, meanwhile, proceeded to perform a security sweep of the truck. When Dover directed Tollison to raise his hands so that Dover could pat him down, Tollison refused and tried to reach into the truck. Dover advised Tollison that he would be handcuffed if he kept reaching into his truck. Dover testified he could see a tire iron and a cooler in the truck. Tollison would not cooperate, so Dover attempted to handcuff him. Tollison struggled to free himself, but both Cooper and Dover gained control of Tollison and patted him down. Nothing was discovered in the pat-down.

Dover took Tollison to the rear of his patrol car and instructed him to sit on the ground so they could interview the passenger, but Tollison began cursing and got up

and walked toward Dover. For safety purposes, the officers then placed Tollison in the vehicle. Tollison continued to curse at the officers and thrash around. When asked what the problem was, Tollison complained that the handcuffs were too tight. Tollison was then asked to calm down by Officer Dover, but he refused to do so. Dover placed Tollison under arrest for violating a reasonable request of an officer for his earlier refusal to keep his hands in the air to allow the pat-down search and for refusing to submit to the subsequent handcuffing. Tollison was then searched incident to the arrest, and officers seized a quantity of methamphetamine from his person. The truck was also searched, and officers seized a number of ephedrine pill packs, a video camera, a quantity of marijuana, a police scanner, and purchase receipts.

Det. Rataj arrived at the scene and walked around to the passenger side of the truck to speak with Williams. Rataj testified that he smelled a strong odor of burnt marijuana coming from the truck's interior. Rataj asked Williams to exit the truck, and when he did, Rataj noticed Williams moving nervously, sweating profusely, twitching, and his jaw was popping. Rataj asked Williams whether he had just purchased some pseudoephedrine pills, but Williams claimed he didn't know what Rataj was talking about. Rataj also asked Williams about the video camera that had been seized, but Williams did not answer. Rataj testified at the hearing that in his experience, drug traffickers frequently film themselves making illicit drugs. Rataj operated the camera

to view the cassette inside and saw such activity.

On May 2, 2004, Det. Rataj submitted his sworn, written affidavit in support of his application for a warrant to search the residences of Tollison and Williams. In the affidavit, Rataj described the circumstances of the stop, his observations, the information provided to him, the search of Tollison's truck and the items seized. Rataj also described what was displayed on the video camera cassette, which were images of Tollison and Williams engaged in drug-related activites at Tollison's residence and the residence of William's sister. Upon Rataj's affidavit, the Court issued a warrant to search Tollison's residence at 795 St. Helen Street in New Madrid, Missouri, and in the execution of the warrant, 21 categories of items were seized.

## Discussion

Defendant Tollison objects to the findings of Judge Noce as articulated in the Report and Recommendation, arguing that the items seized from his truck and his residence should be suppressed, because there was insufficient probable cause for his arrest, and because the Sikeston City ordinance, which formed the basis for the arrest, is unconstitutionally vague.

**Search of Defendant and His Vehicle**

Defendant Tollison objects to the Magistrate's ruling as to the admissibility of the evidence discovered in his truck and on his person. Defendant claims the searches

were not done incident to a lawful arrest. The Court disagrees.

First, Sgt. Cooper had the requisite cause to stop Tollison's vehicle, since Det. Rataj provided him with information regarding the ephedrine purchases. Rataj, an experienced narcotics officer, was contacted by a store employee who witnessed the ephedrine purchase and noted their peculiar behavior. Rataj then saw the blue truck described to him at another store where pseudoephedrine was sold and a store employee there advised Rataj that there was a contemporaneous sale of the substance. In Rataj's experience as a narcotics officer, it was his belief that Tollison was engaged in purchasing precursors for methamphetamine production, and he informed Sgt. Cooper and Officer Dover of his observations and beliefs. Rataj's knowledge and observations were enough to provide "something more than an inchoate and unparticularized suspicion or hunch" for Sgt. Cooper to stop the vehicle. *Alabama v. White,* 496 U.S. 325 (1990) (citing *United States v. Sokolow,* 490 U.S. 1, 7 (1989)); see also *Terry v. Ohio,* 392 U.S. 1, 25-31 (1968). Therefore, clearly, there was reasonable suspicion for the stop.

As for Tollison's arrest, the Court finds it valid and without Constitutional suspicion. By Defendant's own admission in his Memorandum in Support of his Motion to Suppress, Defendant did not comply with officer's instructions to keep his hands in the air and away from his truck when a pat-down search was attempted.

Because Defendant did not comply with the reasonable request of the officer, he was handcuffed and placed in the patrol car. While sitting in the patrol car, Defendant thrashed around and cursed at the officers. Defendant was asked to calm down, but he again refused to comply with the officer's reasonable request. He was then placed under arrest for violating Sikeston City Ordinance No. 4285, which provides:

> It shall be unlawful for any person within the City to refuse to comply with any reasonable order or direction of any officer of the Department of Public Safety in the performance of his official duties.

Probable cause to arrest without a warrant exists when the police have information sufficient to cause a reasonable person to believe that the defendant had committed an offense or was then committing an offense. *Beck v. Ohio,* 379 U.S. 89, 91 (1964); *United States v. Sherrill,* 27 F.3d 344, 347 (8th Cir.), *cert. denied,* 513 U.S. 1048 (1994). Here, there was sufficient probable cause for Officer Dover to conclude that Tollison violated the ordinance since the reasonable request was made by Dover and it was refused by Tollison. Whether Tollison's actions could later be determined a criminal violation as a result of the ordinance being declared unconstitutionally vague is irrelevant to the validity of the initial arrest. *Michigan v. DeFillippo,* 443 U.S. 31, 36-38 (1971) (Court held that arresting officer had abundant probable cause to believe that defendant's conduct violated the ordinance and the fact that the ordinance was later found unconstitutional had no bearing on the officer's duty to enforce the law while still

in effect). The searches of Defendant's person and his vehicle were incident to a lawful arrest, thus, the evidence discovered by police in the searches is admissible. Defendant's objection is overruled.

**Search of Defendant's Residence**

Defendant next objects to the Magistrate's ruling as to the admissibility of evidence discovered at his residence. Tollison claims that the search was the result of an unlawful arrest, and is therefore an illegal search. Defendant cites to *Segura v. United States,* 468 U.S. 796, 804 (1984) for the premise that evidence discovered during the illegal search is the derivative of an illegality or the "fruit of the poisonous tree" and should be excluded. *See also United States v. Fellers,* 397 F.3d 1090, 1094-95 (8th Cir. 2005). The facts, however, doe not support the existence of a illegal search, since the Court, in the above paragraphs, concluded that Tollison's arrest and vehicle search were lawful, and any evidence discovered from the search of the residence will not be suppressed based on the exclusionary rule. In addition, the evidence seized incident to Tollison's arrest was lawfully considered in determining whether there was probable cause to issue a search warrant, since probable cause to issue a search warrant exists when the supporting affidavit sets forth sufficient facts to lead a prudent person to believe that there is a fair probability that contraband or evidence of a crime will be found in a particular place. *United States v. Sundby,* 186

F.3d 873, 876 (8th Cir. 1999).  The task of the issuing judge is to make a "practical, common-sense decision whether, given all the circumstances, set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates,* 462 U.S. 213, 238 (1983).  "And the duty of a reviewing court is simply to ensure that the [judge] had a 'substantial basis for . . . conclud[ing]' that probable cause existed.  *Id.* at 238-39 (citing *Jones v. United States,* 362 U.S. 257 ,271 (1960), *overruled by United States v. Salvucci,* 448 U.S. 83 (1980) (overruled on other grounds)).

In this case, Det. Rataj described in his sworn affidavit the circumstances of the vehicle stop, his observations, the information provided to him by store employees, the search of Tollison's truck and the items seized.  Rataj also described what was displayed on the video camera cassette, which were images of Tollison and Williams engaged in drug-related activites at Tollison's residence and the residence of William's sister.  The warrant issuing judge had a substantial basis, based on the totality of the circumstances, for concluding that probable cause existed for issuing the warrant. Therefore, the search of Defendant's residence was valid, and Defendant's objection is overruled.

The Court therefore adopts the well-reasoned Report and Recommendation of

Judge Noce in its entirety. Accordingly,

**IT IS HEREBY ORDERED** that Defendant Tollison's Motion to Suppress Tangible Evidence, [#19], is denied;

Dated this 1st day of July, 2005.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE